**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JANE DOE, an individual,

       *Plaintiff*                **CASE NO.:**

v.

NAPLES JET CENTER
HOLDINGS, LLC

       *Defendant*

_____/

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff Jane Doe ("Plaintiff"), through undersigned counsel, files this Complaint and Demand for Jury Trial against Naples Jet Center Holdings, LLC ("the Company" or "NJC") and states:

### <u>INTRODUCTION</u>

1. Plaintiff is a young woman who worked at Naples Jet Center as a concierge and then concierge manager.

2. Late at night on January 31, 2024, she was raped by her supervisor, KW, in the owner's office at the Company's Naples location.

3. This violent sexual assault occurred after months of KW participating in and facilitating a culture at NJC where women were sexual objects and threats of rape were treated as a joke.

4. Plaintiff seeks damages arising from Defendant's violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act ("FCRA"), as well as for damages arising from battery.

**PARTIES**

5.      Plaintiff is a woman. Plaintiff was NJC's employee within the meaning of 42 U.S.C. § 2000e(f). Plaintiff's identity is the subject of a contemporaneously filed motion to proceed pseudonymously. If directed by the Court, Plaintiff will submit jurisdictional information sufficient to establish her citizenship under 28 U.S.C. § 1332 under seal.

6.      Defendant Naples Jet Center Holdings, LLC is a Florida limited liability company that operates a private aviation facility in Naples, Florida.

7.      At all relevant times, NJC employed more than fifteen employees and was an employer within the meaning of Title VII and the Florida Civil Rights Act.

**JURISDICTION, VENUE, AND CONDITIONS PRECEDENT**

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under Title VII.

9.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees, and the parties are citizens of different states.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims occurred in this District.

12.     All conditions precedent to the filing of this action have been satisfied.

**GENERAL ALLEGATIONS**

13.     Plaintiff was hired by NJC on or about March 22, 2022, as a concierge associate.

14.     Plaintiff was promoted to Assistant Concierge Manager in or about June 2023.

15.    Plaintiff was promoted to Concierge Manager on or about November 15, 2023.

16.    Plaintiff reported directly to KW, NJC's Director of Operations.

17.    As Director of Operations, KW had authority over Plaintiff's assignments, schedule, and required attendance at work-related events.

*KW and the Culture at Naples Jet Center*

18.    During Plaintiff's employment with NJC, KW routinely facilitated and participated in creating an environment where female employees were sexualized and rape was considered a joke.

19.    KW told an NJC employee that he "could imagine doing anal" on Plaintiff.

20.    KW shared his sexual fantasies about Plaintiff with his co-workers and subordinates.

21.    KW maintained a ranking of female employees based on their physical attractiveness.

22.    KW ignored threats of rape against female employees of NJC.

23.    In late 2023, NJC maintenance employee Rogelio Gomez threatened to rape a co-worker named Mimi.

24.    Plaintiff reported this threat to KW and NJC Vice President Dave Stetson. Both KW and Stetson laughed it off as a joke. No corrective action was taken.

25.    When Plaintiff spoke with KW about a potential candidate for a receptionist position, KW indicated that NJC could hire the candidate, "Only if she's good looking."

*KW Rapes Plaintiff at NJC's Naples Office*

26.    On January 31, 2024, Plaintiff attended the National Business Aviation Association forum in Miami for NJC. Plaintiff was required to attend this forum as part of her job responsibilities.

27.    At the time, Plaintiff had a rental car and drove herself from Naples to Miami.

28.    KW and other team members from NJC attended the same event.

29.    The forum was scheduled to run until approximately 4:00pm that afternoon. Plaintiff intended to drive back to the Naples area after the event.

30.    During the forum, KW called Plaintiff on the phone. KW had just learned that Plaintiff did not plan on traveling back to Naples with him (via private jet). KW was angry about this and demanded to know why.

31.    KW insisted that Plaintiff needed to attend an important lunch meeting with him and NJC client JC.

32.    Plaintiff did not feel comfortable being alone with KW and JC. This was for two reasons. First, KW had a history of sexual harassment and inappropriate behavior. Second, JC had repeatedly boasted about his family's criminal activities. Plaintiff tried to get out of any further work obligations that day. But KW persisted.

33.    After the NJC team left the forum, KW instructed Plaintiff to return her rental car in Miami and then meet him and the client JC for lunch.

34.    In spite of her discomfort, Plaintiff complied with these instructions because KW was her supervisor and NJC's Director of Operations.

4

35.     At lunch in Miami, KW, JC, and the pilot KK pressured Plaintiff to drink with them. Plaintiff, who was 22 years old at the time, felt nervous, uncomfortable, and did not know how to handle the situation.

36.     Although Plaintiff was uncomfortable, a co-worker named Paul was also initially present. Plaintiff trusted Paul and felt safe as long as Paul was there.

37.     KW, JC and KK almost immediately began talking about sex, about Plaintiff's looks, about how they would rank the female employees of NJC, and about having sex with prostitutes in Costa Rica.

38.     At some point during the lunch outing, Paul left. Plaintiff pleaded with him not to leave her, but he had other plans. By then, Plaintiff was already impaired and dependent on KW, JC, and KK for her return travel to Naples.

39.     KW, JC, and KK began to bar hop, dragging Plaintiff with them and assisting her in walking because she was highly intoxicated and having trouble maintaining her balance.

40.     At each stop, KW, JC, and KK gave Plaintiff more to drink.

41.     At approximately 6:02pm, JC took Plaintiff's phone and texted her colleague Mimi: "We're getting trashed on jakes dime" "You missing out" "He took us to a nice restaurant" "I might get gangbanged it's great".

42.     Recognizing that something was wrong and that Plaintiff was not the person sending that text message, Mimi immediately texted back saying, "This is def notttt my baby girl".

43.     At some point before arriving at Opa Locka Executive airport, Plaintiff lost consciousness. She briefly regained consciousness while one of the men was engaging in sex acts with her in the back seat of a car. She then blacked out again.

*Return to Naples*

44.     KW, JC, and KK transported Plaintiff from Miami to Naples on a private aircraft.

45.     Upon arrival, KW led Plaintiff into the Naples Jet Center facility, took her into the owner's office, and locked the door.

46.     Once in the owner's office, KW raped Plaintiff.

47.     Plaintiff did not consent.

48.     Plaintiff was incapacitated and lacked the capacity to consent.

49.     But for KW's position of power at NJC, control over his subordinate Jane Doe, and access to the NJC owner's office, he would have had no such opportunity to commit these acts against Plaintiff.

*The Aftermath*

50.     After regaining consciousness, Plaintiff contacted the authorities to report that she had been raped.

51.     Shortly before 1:00 AM on February 1, 2024, Plaintiff went to the emergency room for a rape kit.

52.     Medical personnel documented that Plaintiff had been intoxicated, lost consciousness, and when she came to, she realized that KW was having sex with her.

53.     Plaintiff never returned to work at Naples Jet Center. Weeks later, she submitted her resignation.

54.     In the time since these events, Plaintiff has moved and started a new job within the private jet charter industry. That industry is small and tightly knit.

55.     As a result of these events, Plaintiff has struggled with depression and anxiety and received professional treatment for both.

6

56. Plaintiff received a Notice of Right to Sue from the EEOC on February 11, 2026.

**COUNT I**
**BATTERY**

57. Plaintiff repeats and realleges Paragraphs 1-56 as if fully set forth herein.

58. KW committed a battery against Plaintiff when he intentionally touched Plaintiff in a harmful, offensive, sexual, and nonconsensual manner, including by raping Plaintiff.

59. Plaintiff did not consent to KW's sexual contact and lacked the capacity to consent.

60. At all relevant times, KW was Defendant's Director of Operations, Plaintiff's direct supervisor, and Defendant's agent.

61. Defendant placed KW in a position of authority over Plaintiff, including authority over Plaintiff's work assignments, schedule, attendance at work-related events, discipline, promotion, and continued employment.

62. KW used that authority to pressure Plaintiff to remain with him after the NBAA event, abandon her own return travel plans, accompany him and Defendant's customer, return to Naples by private aircraft, and enter Defendant's facility and owner's office.

63. KW's position gave him more than mere access to Plaintiff; it gave him supervisory leverage, control over the work-related circumstances, and the means to isolate Plaintiff and accomplish the battery.

64. Defendant created the employer/employee and supervisor/employee relationship that existed between KW and Plaintiff and gave him power over Jane Doe.

65. KW used this power to isolate and rape Plaintiff in a secure office at NJC that he only had access to by virtue of his high-ranking position in the Company.

66. Defendant is liable for KW's battery.

67. As a direct and proximate result of this battery, Plaintiff suffered damages, including emotional distress, humiliation, mental anguish, depression, anxiety, medical and mental-health treatment, lost wages, lost benefits, loss of earning capacity, and other damages to be proven at trial.

68. Plaintiff is entitled to all damages permitted by law.

**COUNT II**
**VIOLATION OF TITLE VII**
**HOSTILE WORK ENVIRONMENT**

69. Plaintiff repeats and realleges paragraphs 1 through 56 as if fully set forth herein.

70. Plaintiff is a woman and was an employee protected by Title VII.

71. Defendant was Plaintiff's employer within the meaning of Title VII.

72. Plaintiff was subjected to unwelcome harassment because of her sex.

73. Plaintiff was raped by KW, Defendant's Director of Operations and Plaintiff's supervisor.

74. The rape alone was an act of sexual harassment so severe that it altered the terms, conditions, and privileges of Plaintiff's employment and created a hostile work environment under Title VII.

75. Defendant is strictly and vicariously liable for the hostile work environment because the rape was committed by Plaintiff's supervisor.

76. In addition to and in support of the hostile work environment created by the rape, Plaintiff was also subjected to other sex-based harassment, including sexual comments, sexual objectification of female employees, threats of rape treated as jokes, pressure to drink in a sexualized work-related setting, and nonconsensual sexual contact.

77. These additional facts are alleged as background, context, corroboration, and damages evidence, and not because Plaintiff is required to prove any additional harassment beyond the rape to establish a hostile work environment.

78. KW used his supervisory authority, position, access, and control within Defendant's workplace to facilitate the harassment and rape.

79. Defendant's conduct violated Title VII.

80. As a direct and proximate result, Plaintiff suffered damages, including emotional distress, humiliation, mental anguish, depression, anxiety, medical and mental-health treatment, lost wages, lost benefits, loss of earning capacity, and other damages to be proven at trial.

81. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights.

82. Plaintiff is entitled to all relief available under Title VII.

**COUNT III**
**VIOLATION OF TITLE VII**
**CONSTRUCTIVE DISCHARGE**

83. Plaintiff repeats and realleges paragraphs 1 through 56 as if fully set forth herein.

84. Plaintiff is a woman and was an employee protected by Title VII.

85. Defendant was Plaintiff's employer within the meaning of Title VII.

86. Defendant subjected Plaintiff to discriminatory working conditions because of her sex, including the sexually hostile work environment described above.

87. The hostile work environment was created by KW, Defendant's Director of Operations and Plaintiff's supervisor, raping Plaintiff in Defendant's owner's office after a work-related event.

9

88.     The rape alone made Plaintiff's working conditions so intolerable that a reasonable person in her position would have felt compelled to resign.

89.     Plaintiff never returned to work after January 31, 2024, and resigned because she was too traumatized to return to the location where the rape occurred and did not feel protected from KW.

90.     Plaintiff was constructively discharged in violation of Title VII.

91.     As a direct and proximate result, Plaintiff suffered damages, including emotional distress, humiliation, mental anguish, depression, anxiety, medical and mental-health treatment, lost wages, lost benefits, loss of earning capacity, and other damages to be proven at trial.

92.     Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights.

93.     Plaintiff is entitled to all relief available under Title VII.

**COUNT IV**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**HOSTILE WORK ENVIRONMENT**

94.     Plaintiff repeats and realleges paragraphs 1 through 56 as if fully set forth herein.

95.     Plaintiff is a woman and was an employee protected by the Florida Civil Rights Act, Fla. Stat. § 760.01 et seq.

96.     Defendant was Plaintiff's employer within the meaning of the Florida Civil Rights Act.

97.     Plaintiff was subjected to unwelcome harassment because of her sex.

98.     Plaintiff was raped by KW, Defendant's Director of Operations and Plaintiff's supervisor.

10

99. The rape alone was an act of sexual harassment so severe that it altered the terms, conditions, and privileges of Plaintiff's employment and created a hostile work environment under the Florida Civil Rights Act.

100. Defendant is strictly and vicariously liable for the hostile work environment because the rape was committed by Plaintiff's supervisor.

101. In addition to and in support of the hostile work environment created by the rape, Plaintiff was also subjected to other sex-based harassment, including sexual comments, sexual objectification of female employees, threats of rape treated as jokes, pressure to drink in a sexualized work-related setting, and nonconsensual sexual contact.

102. These additional facts are alleged as background, context, corroboration, and damages evidence, and not because Plaintiff is required to prove any additional harassment beyond the rape to establish a hostile work environment.

103. KW used his supervisory authority, position, access, and control within Defendant's workplace to facilitate the harassment and rape.

104. Defendant's conduct violated the Florida Civil Rights Act.

105. As a direct and proximate result, Plaintiff suffered damages, including emotional distress, humiliation, mental anguish, depression, anxiety, medical and mental-health treatment, lost wages, lost benefits, loss of earning capacity, and other damages to be proven at trial.

106. Plaintiff is entitled to all relief available under the Florida Civil Rights Act.

**COUNT V**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**<u>CONSTRUCTIVE DISCHARGE</u>**

107. Plaintiff repeats and realleges paragraphs 1 through 56 as if fully set forth herein.

11

108.    Plaintiff is a woman and was an employee protected by the Florida Civil Rights Act, Fla. Stat. § 760.01 et seq.

109.    Defendant was Plaintiff's employer within the meaning of the Florida Civil Rights Act.

110.    Defendant subjected Plaintiff to discriminatory working conditions because of her sex, including the sexually hostile work environment described above.

111.    The hostile work environment was created by KW, Defendant's Director of Operations and Plaintiff's supervisor, raping Plaintiff in Defendant's owner's office after a work-related event.

112.    The rape alone made Plaintiff's working conditions so intolerable that a reasonable person in her position would have felt compelled to resign.

113.    Plaintiff never returned to work after January 31, 2024, and resigned because she was too traumatized to return to the location where the rape occurred and did not feel protected from KW.

114.    Plaintiff was constructively discharged in violation of the Florida Civil Rights Act.

115.    As a direct and proximate result, Plaintiff suffered damages, including emotional distress, humiliation, mental anguish, depression, anxiety, medical and mental-health treatment, lost wages, lost benefits, loss of earning capacity, and other damages to be proven at trial.

116.    Plaintiff is entitled to all relief available under the Florida Civil Rights Act.

**<u>PRAYER FOR RELIEF</u>**

Plaintiff requests the Court enter judgment in her favor and award her the following:

a.  Actual, presumed, compensatory, and punitive damages for Defendant's tortious conduct to the fullest extent permitted by law;

12

b.  All statutorily available damages pursuant to Title VII to the fullest extent permitted by law (including backpay, compensatory, and punitive damages);

c.  All statutorily available damages pursuant to the FCRA to the fullest extent permitted by law (including backpay, compensatory, and punitive damages);

d.  Costs and reasonable attorney's fees;

e.  Pre-judgment and post-judgment interest;

f.  Such other relief this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues that are triable to a jury.

Dated: May 11, 2026                    Respectfully submitted,

By: */s/ Jonathan Pollard*
Jonathan E. Pollard
Florida Bar No.: 83613
jpollard@pollardllc.com
**Lead Counsel**

Christopher S. Prater
Florida Bar No.: 105488
cprater@pollardllc.com


**Pollard PLLC**
500 E. Broward Blvd., Ste. 950
Fort Lauderdale, FL 33394
Telephone: (954) 332-2380

*Attorneys for Plaintiff Jane Doe*

13